LANGFORD *v.* MERCURIO

No. 43766 February 14, 1966 183 So. 2d 150

*Burgin & Gholson,* Columbus, for appellant.

*Ben Owen,* Columbus, for appellee.

*Threadgill & Hicks,* Columbus, for cross-appellees, Nelson Myers and Myers Furniture Company.

BRADY, TOM P., J.

Suit was instituted in the Circuit Court of Lowndes County by Mrs. Grace Mercurio, the appellee, against

Jack Langford and Nelson Myers, d/b/a Fluff-Dry Laundercenter, and also d/b/a the Myers Furniture and Appliance Company. A peremptory instruction was granted to Nelson Myers, individually, and to Jack Langford and Nelson Myers, d/b/a Myers Furniture and Appliance Company. The cause was submitted to the jury as to Jack Langford, the operator of Fluff-Dry Laundercenter, and a verdict was returned in the sum of $10,-000 for alleged personal injuries received by the appellee. From this judgment the appellant, Jack Langford, appeals and the appellee, Mrs. Mercurio, cross-appeals from the granting of the peremptory instruction for Nelson Myers and the Myers Furniture and Appliance Company, a co-partnership.

The essential facts are these: On Sunday afternoon, August 6, 1961, between six and six-thirty, Mrs. Grace Mercurio, who owned and operated a beauty parlor, entered the Fluff-Dry Laundercenter for the purpose of inspecting the washers, contemplating the washing of a quilt which appellee claims her mother had given her. The building which housed the Fluff-Dry Laundercenter was owned by Mr. William Sanders and had been leased by the appellant from him. One-third of this building, at the back, was a storeroom, separated from the laundry by a concrete block wall. There was a weighted, heavy door in the wall which could be raised vertically at the back of the laundercenter. This storeroom was subleased by the appellant to the partnership of Myers Furniture and Appliance Company for storage space. Nelson Myers in turn had leased to Myers Furniture and Appliance Company some storage space located at his lumber company. There was no consideration other than this mutual exchange.

At the time, appellant and Nelson Myers were engaged in a partnership retail furniture and appliance sales business operated under the trade name of Myers Furniture and Appliance Company. This business was

located in a building several blocks distant from appellant's laundry. The storeroom was used by Myers Furniture and Appliance Company to store old, and also uncrated, furniture, and used appliances. The record discloses that this storage area was never open to the public by the furniture partnership and was used solely for storage purposes. The laundercenter had no interest in, or control over, this storage space.

Mrs. Ruth Langford, wife of appellant, was employed by Myers Furniture and Appliance Company in the capacity of a bookkeeper and secretary. Her duties were those generally performed by such an employee. The record fails to establish any employment of Mrs. Ruth Langford as a general agent of the copartnership, her duties being largely clerical. The record fails to disclose that she had anything whatsoever to do with the advertising, sale, or the storage of the furniture or appliances owned by the Myers Furniture and Appliance Company.

Wearing dark glasses, on the afternoon of August 6, the appellee entered the laundercenter of appellant, and approximately thirty minutes later she fell and was injured. She entered the laundry through the only public door, which was well lighted and designated in large block letters as the customers' entrance. The record discloses that the appellee testified she had lived across the street from the back of this building for about ten years prior to the time that she first entered it. She stated that she entered the building to look at the machines and check the prices, but that she had never used and did not use the machines or do any laundry work on that occasion. She testified that she had a conversation with another customer who was in the building, and that after she had been in the laundry about fifteen or twenty minutes Mrs. Ruth Langford, the wife of the appellant, came into the laundry for the purpose of laundering some of her own clothes. Mrs. Langford did

so by depositing coins in the machines just as any other customer would do. Mrs. Langford was subsequently followed into the laundercenter by her husband.

While Mrs. Ruth Langford was folding her clothes which she had dried, appellee's husband suddenly appeared outside the window of the laundry and peered in. The appellee saw her husband and made some statements to Mrs. Langford about running or hiding from him, and asked Mrs. Langford if there was a rear exit from the laundry. What transpired immediately thereafter is in dispute. Mrs. Langford testified she replied that there was no such exit and that she turned around in time and saw the appellee in the act of lifting the heavy, weighted door sufficiently, so that she could leave by "ducking" under it. She further testified that she called out to the appellee to be careful and that the appellee replied that she knew all about the place; that she had lived across from it for about ten years.

On the other hand, the appellee testified that Mrs. Langford, in response to her request, opened this door for her, but admits that Mrs. Langford in substance told her to be careful, and asked her if she knew her way and she stated that she did. On direct testimony, the appellee testified as follows:

A. Well, I said to her, I said, "Can I go out the back?"

THE COURT: All right, go ahead now.

A. All right, thank you. And so she says, "Do you know the way back there?" I said, "I should, I live in the house across the street," so she goes on to the raft and I go on up with her and she opens up this door and lets me out of this light room into this dark out on this concrete walkway out there and I went over and I thought I was going to hit the ground so I went on over, you know, out in this dark.

According to appellee's own testimony, she ran "lickety-split" through the storeroom and ran off a truck load-

ing ramp, falling about thirty inches or three feet to the ground.

Subsequently, on cross-examination, the appellee testified that she just nonchalantly walked through the door and onto the concrete walk where she fell to the ground. Appellee admitted that she knew the ramp was there. She recalled that during the time she lived there she had seen soft drink trucks pull into the back where the ramp was and unload the trucks.

Although the reasons are vague as to why Mrs. Mercurio desired to hide from her husband when she saw him peering in the window, she contends that the reason she said to Mrs. Langford, "There is my husband, I ought to hide from him," is that she was saying it playfully; that she loved her husband dearly and there was no real reason why she should hide from him.

The record further discloses that when the appellee went into the laundercenter she had never seen Mr. or Mrs. Langford before and as far as she could tell Mrs. Langford was just like any other customer in the laundercenter.

There are numerous errors assigned, which relate to the trial of the case, including the granting of an erroneous instruction, the making of inflammatory arguments by appellee's counsel, and the failure of the court to admonish the jury with reference thereto. The disposition of this case does not require our attention to these additional errors.

The basic error urged is that the lower court erred in failing to grant appellant's requested peremptory instruction or to direct a verdict for the appellant. Whether this assignment of error is well taken depends upon whether there was any evidence from which the jury could make a factual determination, giving rise to legal liability on the part of the appellant, Jack Langford, d/b/a Fluff-Dry Laundercenter.

The second question for consideration is that raised by the appellee and cross appellant, namely: Was the copartnership of Nelson Myers and Jack Langford in the operation of Myers Furniture and Appliance Company, and Nelson Myers, individually, liable for the plaintiff's injuries on the partnership property? Stating the second matter for consideration more explicitly: Did Myers or Myers Furniture and Appliance Company breach any duty which it owed the appellee on account of which she sustained the injuries complained of?

■■ Initially we will consider the second proposition. The record discloses that the appellee testified that she knew the way; that she was familiar with the area; that she had lived across from this laundercenter and behind it for approximately ten years. The record reveals that the exit which she took was not for use by the public. In fact, the record fails to disclose that anyone had ever used this exit prior to the time she voluntarily chose to use it. She knew the condition of the ramp and she knew that the ramp had been used by trucks to unload soft drinks. The record fails to disclose that there was any defect in the premises. It follows, therefore, that when she took the route which she took in leaving the building, she assumed all risks of injury by so doing.

■■ The record further discloses she testified that she either nonchalantly walked out upon the ramp and fell therefrom or she ran ''lickety-split'' on the ramp and fell therefrom. The proof is conclusive that it was her negligence, and her negligence alone, which caused her to fall and incur the resultant injuries. Selby v. Williams Realty Corp., 246 Miss. 568, 151 So. 2d 596 (1963).

■■ Since there was no inherent latent defect in the premises, it follows that neither the appellant, Myers Furniture and Appliance Company, a copartnership, nor Nelson Myers, individually, was required to anticipate the unusual and improbable results of the appellee's acts. It would be imposing an unreasonable burden on

a defendant to expect him to anticipate that a woman, in dark glasses, on Sunday afternoon would engage in an alleged game of hide-and-seek with her husband in a laundercenter.

In passing, the record fails to disclose that this was a playful game. On the other hand, it reveals that the appellee's husband had sought her at her home, on the streets, and had finally gone to the laundercenter where he peered through the window and finally saw her, and that she fled in fear, not in fun. It cannot be reasonably held that Myers Furniture and Appliance Company or Myers could anticipate that instead of leaving the laundercenter as she had entered, safely by the front door, that she, in fleeing from her husband, would raise or procure the raising of a heavy vertical door and proceed to leave the laundercenter by an unused exit and go into a building which was not under the control of Jack Langford or his wife or the Fluff-Dry Laundercenter. Unusual and improbable results are not required to be anticipated by the owners or lessees of premises insofar as licensees are concerned. Sturdivant v. Crosby Lumber & Mfg. Co., 218 Miss. 91, 65 So. 2d 291 (1953); Paramount-Richards Theatres, Inc. v. Price, 211 Miss. 879, 53 So. 2d 21 (1951); Mauney v. Gulf Refining Co., 193 Miss. 421, 8 So. 2d 249 (1942), 9 So. 2d 780 (1942).

In the past, as here, we have been tempted to remand the briefs for more accurate and complete briefing as to quotations from cited authorities, for the reason that quotations in the briefs were improperly combined and the citations of the quotations were not accurately given. Under such circumstances it is time consuming and extremely difficult to locate the quotations so as to determine whether or not they were taken in context. Any attorneys who are involved in appeals should take note.

Turning to the specific question of what duty, if any, was owed the appellee by Nelson Myers, individually,

or Myers Furniture and Appliance Company, we must consider the relationship of the appellee to Nelson Myers or to Myers Furniture and Appliance Company. It is the contention of the appellee that Mrs. Langford was the agent of Myers Furniture and Appliance Company, the copartnership, and also the agent of the Fluff-Dry Laundercenter. Assuming, pro arguendo, that Mrs. Langford was an agent under the doctrine of respondeat superior, the appellee wholly failed to establish that Mrs. Langford was acting within the scope of her employment when she permitted appellee to leave from the rear of the laundercenter. Mrs. Langford's employment had no relationship whatsoever to the storage room. See Lovett Motor Co. v. Walley, 217 Miss. 384, 64 So. 2d 370 (1953); Grier v. Thomasson 254 Miss. 491, 182 So. 2d 398 (1966).

While it can be conceded that the appellee was possibly an invitee insofar as the laundercenter is concerned, it cannot be logically contended that she was the invitee of Myers Furniture and Appliance Company. The appellee did not enter the laundercenter as a customer of Myers Furniture and Appliance Company. Mrs. Langford was only a bookkeeper and secretary of Myers Furniture and Appliance Company; she had no connection with, authority over, or direction of, the storage room located behind the laundercenter. No furniture or appliances had ever been sold in the storeroom, and the record is silent as to any being exhibited there. In fact, the proof is wholly lacking to show that the public ever visited or went into the storage room, or conducted any business therein. The appellee was not an invitee of Myers Furniture and Appliance Company when she entered the storeroom.

In Wright v. Caffey, 239 Miss. 470, 474, 123 So. 2d 841, 842 (1960), we defined an invitee as follows:

An invitee is defined as a person who goes on the premises of another in answer to the express or im-

plied invitation of the owner or occupant on the business of the owner or occupant or for their mutual advantage.

This definition is supported also in Strand Enterprises, Inc. v. Turner, 223 Miss. 588, 76 So. 2d 769 (1955); Patterson v. Sayers, 223 Miss. 444, 78 So. 2d 467 (1955); and Nowell v. Harris, 219 Miss. 363, 68 So. 2d 464 (1953).

■■ ■ The appellee did not enter the laundercenter as a customer of Myers Furniture and Appliance Company, and when she undertook, on her own initiative, to go through the storage portion of this building by bending under the door which had been raised, she became a trespasser or at most a gratuitous licensee insofar as Myers, individually, and Myers Furniture and Appliance Company are concerned. This being true, it cannot be said that they breached any duty which they owed her, that duty being no higher than not to injure her willfully or wantonly. Raney v. Jennings, 248 Miss. 140, 158 So. 2d 715 (1963); Selby v. McWilliams Realty Corp., 246 Miss. 568, 151 So. 2d 596 (1963); Dry v. Ford, 238 Miss. 98, 117 So. 2d 456 (1960); Graves v. Massey, 227 Miss. 848, 87 So. 2d 270 (1956); Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So. 2d 785 (1955); 38 Am. Jur. *Negligence* § 109 (1941).

The record establishes without dispute that Nelson Myers and Myers Furniture and Appliance Company did not carry on any public business at the location involved in the accident; they did not invite the public into the area, and the appellee was there without invitation, permission or authority. Before Nelson Myers and Myers Furniture and Appliance Company can be held liable, they must have breached some legal duty which they owed the appellee. In the case at bar the record discloses none, and they owed no duty to the appellee except not to willfully or wantonly injure her. The record is equally clear that they did not do so. It follows, therefore, that the trial court was correct in sustaining

the motion for a peremptory instruction insofar as Nelson Myers, and Myers Furniture and Appliance Company, are concerned.

Turning to the first question, whether there was any evidence from which the jury could make a factual determination giving rise to legal liability on the part of Jack Langford, d/b/a Fluff-Dry Laundercenter, we are faced with the primary question of whether or not Mrs. Ruth Langford was an agent of the laundercenter. It is the contention of the appellee that the acts or omissions of Mrs. Langford were chargeable to the appellant since she was the agent of the appellant. It is true that the only possible way in which the appellant could be held responsible to the appellee would be under the doctrine of respondeat superior, and when this doctrine is invoked it is incumbent upon that party invoking it to establish it by a preponderance of the credible testimony.

We have carefully studied this record and the briefs of counsel, and the evidence which is offered by the appellee, Mrs. Mercurio, in support of appellee's contention that Mrs. Langford was an agent of the laundercenter is limited as follows:

One Paul Ruffin testified that he was employed by Myers Furniture and Appliance Company from September 1962 through January 1963, and that during this time he had seen Mrs. Langford's car at the laundercenter on several occasions, and had seen a bag of coins, which he presumed to be laundry change, in her automobile. This testimony related to a period of time more than one year subsequent to the time of the alleged injuries. It is vague, indefinite, and completely inconclusive in nature. Furthermore, the record discloses that the Langfords owned two cars and that the cars were used indiscriminately by both Mr. and Mrs. Langford; that the car which was the easier to use was the one which was used.

The second witness who testified with reference to Mrs. Langford's being the agent of the laundercenter was the unsubpoenaed voluntary witness, Mrs. Nell Cash. This witness testified that she had been a lifelong friend of the appellee and that she had used the Fluff-Dry Laundercenter facilities since 1956, and that she had seen Mrs. Langford in the laundry on several occasions during the earlier years. On one occasion, she testified, Mrs. Langford made change for her in the laundercenter, and she admitted that customers had also sometimes done likewise for her. She stated that on one occasion she observed Mrs. Langford sweeping up suds from a washing machine which had overflowed. These instances testified to by this witness were not related to the time of the alleged injury to the appellee and the record does not disclose whether they occurred long before or after the alleged injury. The appellee admitted that she had never seen Mrs. Langford before and that when Mrs. Langford entered the laundercenter she thought that she was just another customer. This testimony is entirely too weak and obviously is wholly insufficient to establish an agency.

Appellee urges that it was the duty of agent Mrs. Ruth Langford to warn her. Assuming, pro arguendo, that Mrs. Langford was the agent of the laundercenter, the record discloses that she did in substance warn the appellee when appellee started to go into the storeroom leased by, and under the control of, Myers Furniture and Appliance Company, when she, solicitous for her safety, asked her if she knew the way, to which the appellee replied: "I should, I live in the house across the street." The appellee wholly failed to show or establish the scope of authority, assuming that Mrs. Langford was an agent, in order to make the appellant liable for any acts or omissions on the part of Mrs. Langford.

In Prosser, Torts § 67 at 459-60 (3d ed. 1964), it is pointed out:

By entering freely and voluntarily into any relation or situation which presents obvious danger, the plaintiff may be taken to accept it, and to undertake to look out for himself and relieve the defendant of responsibility. . . .

Furthermore, a plaintiff who has been for a substantial length of time in the immediate vicinity of a dangerous situation will be taken to have discovered and to understand the normal, ordinary risks involved in that situation, such as the danger of trains in motion in a railroad yard, or of standardized obstructions near the track. Once the plaintiff fully understands the risk, the fact that he has momentarily forgotten it will not protect him. (*Id.* at 463.)

It is obvious, therefore, that the frightened appellee, in her unreasonable flight from her husband into the storeroom leased and operated by Myers Furniture and Appliance Company, assumed any risks that were present. These risks, of course, as admitted by her, were known to her by her long familiarity with the premises.

While the appellee denied that her fleeing from her husband was prompted by fear, nevertheless this testimony is negatived by her statements on cross-examination in reference to her sworn bill for divorce. It is obvious that the fear of her husband's finding her in the laundercenter and that he might do something about her being there caused the appellee to flee through the rear of the laundry in a moment of panic. She was either not concerned about her safety or she temporarily forgot about the presence of the loading ramp which was well known to her. The evidence showing assumption of risk by the appellee in the case at bar is as strong as that which existed in Selby v. McWilliams Realty Corp., 246 Miss. 568, 151 So. 2d 596 (1963). In that case we pointed out:

The appellant assigns as error that the court erred in sustaining the demurrer to the amended declaration,

arguing first that the jury could have found that appellant was an invitee on the premises of appellee or a licensee. Secondly, it is argued that the jury could have found that appellee was guilty of negligence in the maintenance of its premises, and that such negligence was the proximate cause of the injuries.

Assuming for the purpose of argument that the appellant was an invitee of the appellee, he went far beyond the limits of the invitation by opening the elevator door, which was closed or fastened, as it was alleged that he was shown by an employee how to open the elevator door. (246 Miss. at 572, 151 So. 2d at 597.)

In the case at bar, granting that the appellee was an invitee as to Fluff-Dry Laundercenter, she went far beyond the limits of the invitation when she undertook to raise or have raised the back door and to exit over the premises of Myers Furniture and Appliance Company. She no longer was an invitee, but by her acts she became either a trespasser or, at best, a mere gratuitous licensee as to the premises over which she fled.

In the case of Dry v. Ford, 238 Miss. 98, 117 So. 2d 456 (1960), we held as follows:

When plaintiff entered the business premises of defendants, he entered as an implied business invitee. However, the undisputed evidence shows that the implied invitation terminated when defendants' foreman advised plaintiff and his employer Brown that they could not install the dimmer switch that day, and when Brown asked for and received permission for him and Dry to install the switch themselves on the premises of the motor company. Plaintiff was acting thereafter solely for his own benefit and convenience.

Possessors of premises have the duty to use reasonable care with reference to invitees on their business property. That duty is coextensive with the invitation. An inviter's duty and corresponding liability for

breach of duty are measured and limited by the nature of the invitation held out to the invitee. If the latter goes beyond the bounds of his invitation, as Dry did here, he loses the status of invitee and the rights which accompany that state. Dry became a licensee. . . . (238 Miss. at 101-02, 117 So. 2d at 458.)

In Selby v. McWilliams Realty Corporation, *supra,* we held as follows:

In the case at bar, we are of the opinion that under the allegations of the declaration the appellant was a gratuitous licensee, and the appellee violated no duties to him, as defined in Marlon Investment Company v. Conner, 149 So. 2d 312 (Miss. 1963).

As to the second assignment argued, we are of the opinion that the appellant, on entering this building at 2:30 A.M., when the building was in complete darkness, and opening the elevator door and falling into the shaft, was not exercising reasonable care for his own safety and his negligence was the sole proximate cause of his injuries, and the appellee was guilty of no negligence in connection therewith. (246 Miss. at 573, 151 So. 2d at 597-98.)

In Graves v. Massey, 227 Miss. 848, 87 So. 2d 270 (1956), we pointed out that the only legal duty owed a licensee was not to willfully and wantonly injure him. In that case we said:

Being a mere licensee, neither of the defendants who are appellees on this appeal owed him any duty except not to willfully or wantonly injure him. . . . (227 Miss. at 851, 87 So. 2d at 271.)

But it seems to be the contention of the plaintiff that the trial court should have permitted the jury to determine the question of whether the plaintiff was a mere licensee or invitee on the occasion in question. But we think that where the given and undisputed facts disclose that the plaintiff was a mere licensee, the court should not submit to the jury the question of

whether or not his status was otherwise. The court properly decided that as a matter of law under the given and undisputed testimony that the plaintiff was a mere licensee on the occasion complained of, and that there was no evidence to go to the jury to warrant a finding that either defendant had breached the legal duty owing to a licensee not to willfully or wantonly injure him. (227 Miss. at 853, 87 So. 2d at 271.) Also, see Bishop v. Stewart, 234 Miss. 409, 106 So. 2d 899 (1958).

.█ From the foregoing, it follows therefore that the lower court should not have submitted to the jury the question of whether or not the status of the appellee was other than that of a licensee. There was no evidence to go to the jury to warrant a finding that this appellant had breached any legal duty owing to this licensee, that duty being not to willfully or wantonly injure her. There is no proof that this appellant willfully or wantonly injured her, and therefore the lower court should have granted the peremptory instruction requested by the appellant.

While we sympathize with the appellee because of her injuries and resultant pain and suffering, nevertheless this does not grant us the right to permit recovery in this case. The judgment of the circuit court is therefore reversed and judgment entered here for appellant.

Reversed and judgment here for appellant.

*Ethridge, C. J., and Rodgers, Smith and Robertson, JJ., concur.*