497 So.2d 1097 (1986)
Melinda Sue ADAMS, a Minor By and Through Her Mother and Next Friend, Betty Sue Adams
v.
FRED'S DOLLAR STORE OF BATESVILLE, F.W. Loden and James P. Loden, Individually and d/b/a Loden Partnership.
No. 55837.
Supreme Court of Mississippi.
October 15, 1986.
Rehearing Denied December 10, 1986.
Larry O. Lewis, Jimmy Miller, Marks, William O. Luckett, Jr., Clarksdale, for appellant.
L.F. Sams, Jr., Michael D. Greer, Mitchell, McNutt, Bush, Lagrone & Sams, Tupelo, Jack F. Dunbar, Michael N. Watts, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, P.K. Bramlett, Buck, Baker & Bramlett, Nashville, Tenn., for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Plaintiff appeals from an order of the Circuit Court of Panola County granting summary judgment in favor of defendants Fred's Dollar Store of Batesville and the Lodens individually and doing business as *1098 Loden Partnership. For reasons hereinafter discussed, we affirm.
Melinda Sue Adams, by and through her next friend, brought suit September 13, 1983, seeking $2,576,546.14 in actual and $1,000,000.00 in punitive damages as a result of injuries she received when the car she was driving struck a concrete block located in the East Gate Shopping Center in Batesville, Mississippi. She alleged that as a result of the collision she received permanent damage to her larynx and resulting harm, and she alleged special damages in the form of medical bills.
The trial court found there was no material issue of fact concerning Melinda Sue Adams' status as that of a trespasser and that the corresponding duty owed Adams was not breached. The trial court entered summary judgment in favor of the defendants July 18, 1984.
Melinda Sue Adams appeals assigning five errors. However, here she only argues three points:
I.
THE COURT ERRED IN ITS FINDING THAT THERE WAS NO MATERIAL ISSUE OF FACT AS TO THE STATUS OF PLAINTIFF AS TRESPASSER UPON DEFENDANTS PROPERTY AT THE TIME OF THE ACCIDENT.
II.
UNDER THE CIRCUMSTANCES, THE CONCRETE PIER UPON THE DEFENDANTS' UNLIT PARKING LOT CONSTITUTED A "TRAP" OR "HIDDEN PERIL" AND WAS NOT AN OPEN OR OBVIOUS DANGER.
III.
THE COURT SHOULD ABANDON THE RIGID COMMON LAW DISTINCTIONS MADE BETWEEN "INVITEES" AND "LICENSEES" AND RECOGNIZE A DUTY OF REASONABLE CARE WHICH THE POSSESSOR OF LAND OWES TO ALL LAWFUL VISITORS.
Appellee Fred's Dollar Store cross-assigns as error:
IN THE ALTERNATIVE, THE CIRCUIT JUDGE SHOULD HAVE SUSTAINED APPELLEE FRED'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT FRED'S HAD NO OWNERSHIP OR LEASEHOLD INTEREST IN THE PARKING AREA WHERE THE ACCIDENT OCCURRED.

STATEMENT OF THE FACTS
Summary judgment was granted based largely on facts developed in depositions given by Melinda Sue Adams, defendant F.W. Loden, III and Melinda's friend Brenda Williams.
Melinda Sue Adams stated in her deposition that she left home about 8:30 p.m. on May 29, 1982, and drove to the First United Pentecostal Church in Batesville to pick up her friend, Brenda Williams. They were going to drive around town. They made a couple of stops and spoke with Melinda's boyfriend, now husband, and his friend before she decided to take one more loop around town and then take Brenda home. Melinda was headed east on Mississippi Highway 6 when she came to the East Gate Shopping Center. Melinda testified it was about 10:30 p.m. when she turned her car into the shopping center parking lot in order to turn around and head west on Mississippi Highway 6 by exiting the other side of the lot. Though she had never done this before, she stated "everybody else goes up through there." The stores were all closed, and all the lights in the stores and the parking lot were turned off. There was a sign at the entrance that stated "Private Parking Lot  Closed 8 P.M. to 7 A.M.  By Order of Police Dept." Melinda stated she did not intend to buy anything; she only intended to use the parking lot to turn around. Melinda drove slowly in first gear and noticed another car approaching from the opposite direction. She was not wearing a seatbelt. She struck a concrete slab and the impact threw her against the steering wheel. Her throat struck the top of the steering wheel. This cut part of *1099 Melinda's vocal cords and necessitated surgical implantation of teflon and surgical removal of scar tissue. Melinda and Brenda, her passenger, stated they did not see the concrete block before the accident.
Loden testified that the block was intended to be a base for a light pole but he had not gotten around to putting it up. Loden further stated that subsequent to erecting this base other lighting was added and he thought when the lights were turned on the parking lot had adequate lighting without a light pole at that spot.
Appellant Melinda points to several things which she argues shows at least negligence on the part of the Lodens. The lights were turned out on the parking lot at 8:00 p.m. as a matter of policy, after all the stores closed. The concrete block was not illuminated or marked. The defendants knew that the parking lot was frequented by teenagers who parked there or used the lot to turn around. Defendants probably knew or should have known, that at least one other person had also hit the same concrete block before Melinda's injury. A story and accompanying photograph in a local paper which Melinda attached to her pleadings detailed a similar incident involving the concrete block. The story relates that the incident occurred in 1980, roughly three years before Melinda's injury.
The Lodens in turn note that the deposition of defendant F.W. Loden was uncontradicted that defendants turned the lights off and posted a sign prohibiting anyone from using the lot after the stores closed at 8:00 p.m. by police order in an attempt to stop persons and vandals from coming onto the lot. F.W. Loden asked Batesville City Police to patrol the area to enforce this closing. Prior to the accident Melinda had not seen the sign, but she saw the sign after the accident when she returned to the lot. She could not say the sign was not there the night of the accident. Loden stated that the sign was put up some time before the accident and was in place that day.
In support of its cross-assignment of error, appellee Fred's Dollar Store, points to testimony by Loden that Fred's was the owner of the parking lot directly in front of its store and the Lodens had maintenance responsibility for the remainder of the lot, though the Lodens could charge the tenants for the cost of maintenance. Loden stated that the concrete block in question was not on Fred's property. Neither Melinda nor F.W. Loden testified that they knew of anything Fred's did or failed to do which caused the accident.

LAW

I.
Did The Court Err In Finding That There Existed No Issue Of Material Fact As To Plaintiff's Status At The Time Of The Accident?
Rule 56 of the Mississippi Rules of Civil Procedure
[A]llows for summary judgment where there is no genuine issue of material fact, and where the moving party is entitled to judgment as a matter of law.
Modling v. Bailey Homes and Ins., 490 So.2d 887, 891 (Miss. 1986); Cole v. Wiggins, 487 So.2d 203, 207 (Miss. 1986). The party seeking summary judgment "must affirmatively establish the absence of a genuine issue of material fact... ." Gray v. Baker, 485 So.2d 306, 308 (Miss. 1986). The evidence "must be viewed in the light most favorable to the party against whom the motion has been made." Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983). In deciding a Rule 56 motion, the trial court does not try the issue, but only determines whether there are issues to be tried. Shaw v. Burchfield, 481 So.2d 247, 252 (Miss. 1985); Bush v. Mullen, 478 So.2d 313, 315 (Miss. 1985).
In Hughes v. Star Homes, Inc., 379 So.2d 301, 303-04 (Miss. 1980), this Court outlined the three recognized categories into which fall plaintiffs injured on the property of another, and outlined the pertinent corresponding duties.
The status of a person on the property of another was stated succinctly in Hoffman v. Planters Gin Co., Inc., 358 So.2d *1100 1008, 1011 (Miss. 1978), in the following language:
As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966); Wright v. Caffey, 239 Miss. 470, 123 So.2d 841 (1960). A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation or other right. Kelly v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955).
A landowner owes a licensee the duty to refrain from willfully or wantonly injuring him. Astleford v. Milner Enterprises, 233 So.2d 524 (Miss. 1970); Marlon Investment Co. v. Conner, 246 Miss. 343, 149 So.2d 312 (1963); Dry v. Ford, 238 Miss. 98, 117 So.2d 456 (1960). A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him. McGee v. Charles F. Smith & Sons, Inc., 357 So.2d 930 (Miss. 1978); Ausmer v. Sliman, 336 So.2d 730 (Miss. 1976); Langford v. Mercurio, 254 Miss. 788, 183 So.2d 150 (1966); Kelly v. Sportsmen's Speedway, Inc., 224 Miss. 632, 80 So.2d 785 (1955). Larry Hughes, Jr. was a trespasser, or at most a licensee. In either status, the duty owed him by the defendants was to refrain from willfully or wantonly injuring him.
Here the trial court held that there was no genuine issue of fact concerning Melinda's status.
The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law for the trial judge. Graves v. Massey, 227 Miss. 848, 853, 87 So.2d 270, 271 (1956). See also Hoffman, 358 So.2d 1008; Langford v. Mercurio, 254 Miss. 788, 805-06, 183 So.2d 150, 157-158 (1966). The Florida Supreme Court in Wood v. Camp, 284 So.2d 691, 695-96 (Fla. 1973), noted that the question of status may be a factual question for the jury or purely a question of law.
Here the trial court found the undisputed facts established that Melinda was a trespasser.
We agree. The partnership acting through F.W. Loden had posted a sign telling people to stay off the lot. Lights in the stores and in the parking lot were turned off indicating that no one was welcome. No doubt, the defendants could have done more to keep people from coming on the parking lot. They could have barricaded the parking lot entrances but such was not necessary. A landowner need not make it impossible for persons to trespass before he may treat intruders as trespassers. To hold otherwise would be to come dangerously close to requiring that an owner be an insurer of the safety of those who unlawfully enter his property. Here there is no dispute that Melinda intended to serve only her interests by driving onto the lot. There is no dispute that Melinda lacked express permission to go upon the lot.
Melinda seeks to establish that there exists a dispute as to whether she was a licensee rather than a trespasser. It is established in Mississippi that one may become a licensee by entering another's premises with implied permission. Lucas v. Mississippi Housing Authority No. 8, 441 So.2d 101, 103 (Miss. 1983); Hughes v. Star Homes, Inc., 379 So.2d 301, 304 (Miss. 1978); Hoffman v. Planter's Gin Co., Inc., 358 So.2d 1008, 1011-12 (Miss. 1978). Melinda argues that there are facts in the record which create a question of whether the Lodens acquiesced in or condoned continued use of the parking lot after hours. This could demonstrate implied permission for Melinda to enter the parking lot that night, she argues. White v. Mississippi Power & Light Co., 196 So.2d 343, 349 (Miss. 1967). However, merely entering property without incurring civil or criminal liability does not confer licensee status.

*1101 While it is undoubtedly true that a failure to object may amount to tacit permission, it seems clear that the mere fact the landowner does not take burdensome and expensive precautions, which may well be futile, to keep trespassers out, does not in itself indicate that he is willing to have them enter. The real basis of liability to such "tolerated intruders" would seem to be only the ordinary duty to protect another, where the harm to be anticipated from a risk for which the defendant is responsible outweighs the inconvenience of guarding against it.
Prosser & Keeton, Supra, § 58, at 396.
We are not prepared to require that parking lot owners must physically prevent entrance to their lots to avoid acquiescing in unpermitted intrusions. Here the intrusion was unpermitted. Melinda Sue Adams was a trespasser.
If we were to assume a genuine issue of fact exists concerning Melinda's implied permission to enter the lot, it would not change the result. If Melinda could prove she was a licensee, it would not help her.
Under these circumstances it makes no difference whether she was a trespasser or a licensee. The duty owed each is the same  the defendant must only refrain from willfully or wantonly injuring the plaintiff.
The Court has recognized an exception. Ordinary reasonable care is required where the landowner engages in active conduct and the plaintiff's presence is known to him. Hughes, 379 So.2d at 304; Hoffman, 358 So.2d at 1013. This exception has no application where the licensee is injured as a result of the condition of the premises, or passive negligence. Hughes, 379 So.2d at 304. Any negligence here was passive at most, and thus does not fall within the exception.

II.
Under The Circumstances, Did The Concrete Pier Upon The Defendant's Unlit Parking Lot Constitute A "Trap" Or "Hidden Peril."
Melinda argues this case falls within the niche we carved in Marlon Investment Co. v. Conner, 246 Miss. 343, 149 So.2d 312 (1963). There we stated "no duty exists toward a licensee except to refrain from willfully or wantonly injuring him, and not to set traps for him by exposing him to hidden perils." 246 Miss., at 351, 149 So.2d at 315. (emphasis added) See Prosser and Keeton On The Law of Torts 417 (W. Page Keeton 5th ed. 1984); Restatement (Second) of Torts § 342 (1964).
To meet the duty regarding traps and hidden perils, we said in Marlon that the premises owner must "disclose to the licensee any concealed, dangerous conditions on the premises of which the owner has knowledge, and to exercise reasonable care to see that the licensee is aware of the danger." Id. at 353, 149 So.2d at 316.
To address this argument we may assume that a factual dispute exists concerning the Lodens' knowledge of any danger associated with the concrete light pole base.
Melinda's argument proceeds that the concrete block in this case amounted to a hidden peril, or at least presented a question for the jury to resolve. We find this argument unconvincing.
Marlon involved a woman who was injured when she slipped on debris while ascending unlit stairs at night. She had descended the stairs by mistake, being misled by a lighted sign into believing the stairs led to the establishment next door. In fact, the stairs led to locked doors. This Court noted these and other circumstances which properly allowed a jury to find that the defendant failed to take reasonable precautions to prevent plaintiff's injuries. 246 Miss. at 356-57, 149 So.2d at 318. In essence, the misleading invitation in Marlon concealed the dangerous, unmaintained stairway.
This case does not, however, present what we visualize as a "trap," a "hidden peril" or a "concealed pitfall." The block was visible by day. It stood above ground and was open and obvious. There was no *1102 misleading information. Darkness is the only circumstance to which Melinda can point as establishing this block as a trap. Darkness alone did not make this otherwise obvious danger hidden. This did not present a danger which Melinda and others "cannot reasonably be expected to observe and avoid." Marlon, 246 Miss. at 357, 149 So.2d at 318.

III.
Should This Court Abandon The Common Law Distinctions Made Between "Invitees" And "Licensees" And Recognize A Duty Of Reasonable Care Which The Possessor Of Land Owes To All Lawful Visitors?
Under this assignment of error, Melinda Sue Adams seeks to have this Court abandon at least the distinction recognized in the common law between the duty owed an invitee and a licensee. Whatever merit there might be in considering this approach faced with a clean slate, we do not have that luxury. To adopt such a position now would cause an upheaval of the common law and needlessly inject uncertainty into the realm of commercial and private legal relations. We here reaffirm our intention to follow the common law distinctions.
Prosser and Keeton note that the most recent courts to consider abandoning these distinctions followed the path we take today. Prosser And Keeton On The Law Of Torts § 62 (W. Page Keeton 5th ed. 1984) See Annot., 22 A.L.R. 4th 294 (1983 and Supp. 1985) The authors perceptively note this more recent trend may be based on dissatisfaction with the notion of reducing "whole systems of legal principle to a single, perhaps simplistic, standard of reasonable care, the sometimes blind subordination of other legitimate social objectives, to the goals of accident prevention and compensation, and the commensurate shifting of the decisional balance of power to the jury from the judge." Id. See Gerchberg v. Laney, 223 Kan. 446, 450-52, 576 P.2d 593, 597-98 (1978); Rowland v. Christian, 69 Cal.2d 108, 120-21, 443 P.2d 561, 569, 70 Cal. Rptr. 97, 105 (1968) (Burke, J., dissenting).
From what we have said it is clear Melinda Sue Adams could not recover under any theory advanced. Accordingly, the trial court's order granting summary judgment is affirmed.
Obviously it is unnecessary to reach Fred's cross-assignment of error.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.