## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-00079-SCT

*PATRICK SAUCIER, THROUGH HIS NEXT*
*FRIEND, VIRGINIA SAUCIER AND VIRGINIA*
*SAUCIER, INDIVIDUALLY*

*v.*

*BILOXI REGIONAL MEDICAL CENTER, CITY OF*
*BILOXI, MISSISSIPPI AND CYNTHIA H.*
*BAMBURG*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/16/96 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT |
| ATTORNEYS FOR APPELLANTS: | JOE SAM OWEN |
| | ROBERT P. MYERS, JR. |
| ATTORNEYS FOR APPELLEES: | GEORGE F. BLOSS, III |
| | ROBERT H. TYLER |
| | DORRANCE DEE AULTMAN, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 3/19/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/16/98 |

**BEFORE SULLIVAN, P.J., BANKS AND MILLS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here, we are called upon to assess the duty of care owed one who breaks into vacant premises and consumes controlled substances found therein. We conclude that the plaintiff was, in fact, a trespasser, that the trial court applied the correct duty of care in resolving this matter based upon the evidence shown and that summary judgment was proper. Thus, we affirm.

### I.

¶2. On or about July 21, 1993, sixteen-year-old Patrick Saucier and a couple of his buddies entered an abandoned hospital building known as the Old Biloxi Regional Medical Center in Biloxi, Mississippi through a broken out window with the intent to smoke marijuana and see the ghosts that

purportedly lived in the morgue of the hospital. The teenagers stayed in the facility for about twenty minutes while they smoked marijuana and spray painted their names on the walls.

¶3. The next night they returned to the facility and upon searching the building discovered a large amount of drugs in the hospital's pharmacy area. The teenagers found a box and filled it with various pills. They then went to the home of one of the boys and used a *Physician's Desk Reference* Manual, to compare pictures of pills in the book with the pills they took from the facility. After identifying as many pills as they could and determining what kind of high they would get, the boys divided the identified pills and threw away those they could not identify. All of them ingested some pills at some point.[(1)]

¶4. On July 24, 1993 at 3:30 p.m., Patrick's father returned home from work to find Patrick unconscious in the bathtub. Mrs. Saucier was quickly summoned, and together they took Patrick to the hospital where it was determined -- via urine and blood tests -- that amphetamines, barbituates and marijuana were in his system. While the Sauciers waited for Patrick's test results, they went to the abandoned hospital after Patrick told his disbelieving parents that he got the drugs from the facility. Patrick's story, i.e., that there was a large quantity of prescription drugs in the abandoned hospital, was confirmed by his parents.

¶5. The next day Mrs. Saucier called the local police department and talked with Officer O'Bannon, informing him that there were prescription drugs in the abandoned hospital. O'Bannon sent an officer to the hospital to investigate. The officer confirmed Mrs. Saucier's allegations. The following day Mrs. Saucier, Officer O'Bannon and a few other people returned to the abandoned hospital where it was noted that, besides drugs, there were syringes, hypodermic needles, an operative x-ray machine, medical files, IV bags and fluids and other hospital equipment and items strewn throughout the building.

¶6. Extremely upset by their findings, Mrs. Saucier, on behalf of Patrick and herself, sued the City of Biloxi (the owner of the facility at the time of the incident), the Biloxi Regional Medical Center (the previous owner of the facility), and Cynthia Bamburg (the director of the pharmacy department at the center). The complaint alleged that the drugs had been negligently and carelessly left in the abandoned building, that all of the defendants knew or should have known the drugs had been left unsecured in the building, and that the lack of a secured premise created a danger to Patrick. Additionally, the complaint alleged that the defendants negligently allowed confidential medical records to remain in the unsecured premises, thereby breaching the duty of confidentiality owed to former patients including Mrs. Saucier. Finally, the complaint posited that all of the defendants were wanton, willful, and that their negligence was the product of gross negligence evidencing a reckless disregard for the safety of others.

¶7. All of the defendants denied liability and filed motions for summary judgment, premised upon the argument that Patrick was a trespasser or, at most, a licensee and that there was no evidence the defendants intentionally or wantonly injured him.

¶8. The trial court granted the summary judgment motion, finding that the Sauciers failed to provide evidence that any of the medical records found in the facility belonged to Mrs. Saucier, that Patrick was a trespasser or a mere licensee and that, either way, the duty of care owed to him by the defendants was the same -- not to willfully or wantonly injure him while he was on the landowner's

premises. Additionally, the trial court concluded that Patrick knew the hospital was shut down, knew that he did not have the owners' permission to enter the facility, and as such he was a trespasser who voluntarily assisted in removing the pills from the building and who voluntarily ingested the pills off the premises.

¶9. Aggrieved, the Sauciers appeal to this Court for relief.

## II.

¶10. This Court employs a *de novo* standard of review when reviewing a lower court's grant of summary judgment. *See* **Townsend v. Estate of Gilbert**, 616 So. 2d 333, 335 (Miss. 1993) (*citing* **Short v. Columbus Rubber & Gasket Co., Inc.**, 535 So. 2d 61, 63 (1988)). "This entails reviewing all the evidentiary matters in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the. . .non-moving parties, and they are to be given the benefit of every reasonable doubt." **Townsend**, 616 So. 2d at 335 (*citing* **Smith v. Sanders**, 485 So. 2d 1051, 1054 (Miss. 1986); **Dennis v. Searle**, 457 So. 2d 941, 944 (Miss. 1984)).

¶11. A motion for summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **Townsend**, 616 So. 2d at 335 (*citing* Miss.R.Civ.P. 56(c)). We do not try issues on a Rule 56 motion; this Court only determines whether there are issues to be tried. **Townsend**, 616 So. 2d at 335. In reaching this determination, we examine affidavits and other evidence to determine whether a triable issue exists, rather than for the purpose of resolving that issue. *See* Miss.R.Civ.P. 56 cmt; **Seymour v. Brunswick Corp.**, 655 So. 2d 892, 895 (Miss. 1995). The trial judge's decision is reversed if a triable issue of fact exists; otherwise, the decision is affirmed. **Brown v. Credit Center, Inc.**, 444 So. 2d 358, 362 (Miss. 1983).

## III.

¶12. The Sauciers argue the trial court failed to apply the correct duty of care owed to Patrick by the defendants and therefore improperly granted the defendants' motion for summary judgment.[(2)]In particular, they argue that Patrick Saucier was a known licensee and that the proper duty of care was the duty to exercise ordinary and reasonable care, citing **Hoffman v. Planters Gin Co., Inc.**, 358 So. 2d 1008 (Miss. 1978).

¶13. The determination of which status a particular plaintiff holds can be a jury question. Where the facts are not in dispute, however, the classification becomes a question of law for the trial judge. *See* **Adams by and through Adams v. Fred's Dollar Store of Batesville**, 497 So. 2d 1097, 1100 (Miss. 1986) (*citing* **Graves v. Massey**, 227 Miss. 848, 853, 87 So. 2d 270, 271 (1956); **Hoffman v. Planters Gin Co., Inc.**, 358 So. 2d 1008 (Miss. 1978); **Langford v. Mercurio**, 254 Miss. 788, 805-06, 183 So. 2d 150, 157-158 (1966); **Wood v. Camp**, 284 So. 2d 691, 695-96 (Fla. 1973)).

¶14. Here, the facts surrounding Patrick's entry into the abandoned hospital were undisputed and uncontested. The record evidence showed that he and his friends entered the building on the first night to smoke marijuana and see the ghosts that were believed to inhabit the facility. The second night, the night they found and removed the drugs, they returned to the facility to find the ghosts. None of the parties disputed the facts surrounding the instant incident. Furthermore, the evidence was not sufficient concerning the prior practices of other individuals going into the facility to trigger

an issue for the jury; therefore, the classification of Patrick's status was a question properly before the trial judge for determination. *Adams*, 497 So. 2d at 1100.

¶15. The trial judge concluded that Patrick was a trespasser because he was not invited into the hospital, did not have permission (explicit or implicit) to enter the facility, was not the owner, and knew that the hospital had been shut down. This Court's role is only to determine, via *de novo* review, whether the trial court erred in finding that Patrick was a trespasser and in granting the summary judgment motion premised upon his status as such. The Sauciers argue the trial court did, in fact, err as the evidence as a whole showed that Patrick was a licensee under the *Hoffman* exception to which a duty to exercise ordinary and reasonable care was owed.

¶16. A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner. The duty of care owed to a licensee by the owner of premises is to refrain from willfully or wantonly injuring him. *Astleford v. Milner Enterprises, Inc.*, 233 So. 2d 524 (Miss. 1970).

¶17. In *Hoffman*, however, this Court carved out an exception to the general duty of care owed to a licensee and it is upon this exception the appellants rely. In *Hoffman*, a fourteen-year-old boy occasionally assisted his father on his job by helping to unload his father's truck at a gin. Once, the boy, his father, and another gin employee were inside a tunnel removing seeds that had gotten inside the auger of the tunnel and that were slowing the flow of the seeds through the tunnel. Upon seeing the three people in the tunnel, the gin manager told them to be careful and not to get into the auger. The father and gin employee soon left the tunnel, but the fourteen-year-old remained, continuing to remove seeds from the auger. Subsequently, the boy slipped and fell through the auger, resulting in his leg being amputated below the knee.

¶18. The trial court found that the boy was a mere licensee and that the duty of care owed to him was simply not to willfully or wantonly injure him. We found, however, that the boy's presence in the tunnel was known by the defendant gin company through its manager who had admonished the boy to be careful on the day of the incident. *Id.* at 1011. We therefore concluded that:

> [T]he premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application.

*Id.* at 1013.

¶19. We have since stated that this new and heightened duty of care owed to known licensees is limited to "those cases involving injury resulting from *active conduct as distinguished from conditions of the premises, or passive negligence*." *Hughes v. Star Homes, Inc.*, 379 So. 2d 301, 304 (Miss. 1980) (emphasis added).

¶20. To fall within the *Hoffman* exception, there must be evidence that the landowner (1) was aware of the licensee's presence on the premises and that the landowner (2) engaged in affirmative or active negligence in the control or operation of activities on the premises. Neither of these requirements is present on these facts.

¶21. First, Patrick did not have the permission of the owner of the facility, the City of Biloxi, to enter the facility. As he conceded in his deposition, the owner did not invite him onto the premises in any way. In fact, the Sauciers asserted that Patrick's license to be on the premises arose from the City of Biloxi's failure to keep teenagers from occupying the building considering their alleged knowledge of the teenagers' presence. Beyond their bare assertions, however, the Sauciers fail to bring forth evidence that the relevant appellees were aware that teenagers were frequenting the building.[(3)]

¶22. Although Patrick testified that a lot of kids went into the building and had been going for three or four years, they presented no evidence based upon personal knowledge to support these assertions. This Court has cautioned that a party opposing a motion for summary judgment must be diligent. *Grisham v. John Q. Long V.F.W. Post*, No. 4057, Inc., 519 So. 2d 413, 415 (Miss. 1988). We have further held that in a summary judgment proceeding the plaintiff must rebut the defendant's claim by producing supportive evidence of significant and probative value. *Palmer v. Biloxi Regional Medical Center, Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). The non-movant may not rest upon the allegations or denials in the pleadings, but rather must, by affidavit or otherwise, set forth specific facts showing that there are indeed genuine issues for trial. *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 198-99 (Miss. 1988).

¶23. Additionally, the Sauciers failed to bring forth an affidavit from anyone with personal knowledge to support their conclusory statements that various neighbors had called the Biloxi Police Department and reported that children and young adults were using the facility and that the defendants were actually aware of the fact that the hospital was being used regularly by teenagers and young adults. The most the evidence showed was that the mayor, who was councilman at the time of the newspaper article, was aware that the old Biloxi Regional Medical Center had been vandalized.

¶24. Mrs. Saucier contended in her deposition that Officer O'Bannon, the officer she initially told about the presence of drugs in the facility, intimated to her during their walk-through of the facility that the police department had received complaints about the facility. She failed, however, to obtain an affidavit from the officer to this effect. None of the assertions made by the Sauciers concerning the fact that the City of Biloxi knew about the regular use of the facility by teenagers and young adults was supported by affidavits or otherwise. Put simply, they fail to prove that the defendants were aware or should have been aware of Patrick's presence in the facility on the night in question. Thus, the *Hoffman* exception is inapplicable.

¶25. Furthermore, they fail to prove that the defendants engaged in negligent maintenance of the building which rose to a level constituting implicit condonation of Patrick's use of the facility. They assert the defendants were negligent in maintaining the electricity in the building -- that this attracted the neighborhood children to the facility. However, the very record evidence that they emphasize, i.e., the newspaper articles, indicates that the electricity was maintained as a security precaution. One of the articles also establishes, via a statement by a neighbor who lived a block away from the facility, that security guards had been used to protect the facility. This statement contradicted the Sauciers' bare assertion that security guards were not utilized. Moreover, the Sauciers conceded that all of the windows to the facility were boarded up except the two broken ones used to enter the facility.

¶26. Still further, while the newspaper articles reported that the abandoned hospital was being vandalized, the articles did not establish, or even imply, that the hospital was being frequented by the

neighborhood children as the Sauciers suggest. That said, this Court has not lost sight of the fact that the newspaper articles are no more than hearsay.

¶27. Although the *Hoffman* exception does not apply as the instant facts are clearly distinguishable from those involved in that case, the question remains about Patrick's status in the hospital.

¶28. A trespasser is one who enters upon another's premises "without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity." *Kelley v. Sportsmen's Speedway, Inc.*, 224 Miss. 632, 644, 80 So. 2d 785, 790 (1955). The duty of care owed to a trespasser is to refrain from willfully or wantonly injuring him. *Id.*

¶29. We find that Patrick was, in fact, a trespasser in this instance. He testified that he knew the abandoned hospital had been shut down and that he had not been invited or given permission to enter the facility. Also, the evidence conclusively established that Patrick entered the facility for his own convenience and with his own purpose in mind -- to smoke pot and spot ghosts.

¶30. As a trespasser (or mere licensee), the defendants owed Patrick a duty to refrain from willfully or wantonly injuring him. *Adams*, 497 So. 2d at 1101. This is the standard of care used by the trial court in deciding the summary judgment motion, and the issue before this Court is only to determine whether the trial court applied the correct standard of care in passing upon the motion for summary judgment. We find no impropriety in the trial court's disposition of this matter.

## IV.

¶31. For the foregoing reasons, we affirm the lower court's order granting summary judgment.

¶32. **AFFIRMED**.

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. When exactly Patrick ingested some of the pills is not clear. At his deposition, he stated that he took some of the pills the next day. At a separate proceeding before the Board of Pharmacy, Patrick claimed he went with his friends and looked the pills up in the *PDR* Manual and took the pills that night. It is undisputed that at some point he ingested some of the pills.

2. Throughout their brief, the Sauciers also challenge the trial court's dismissal of their claim that the defendants negligently left hospital records in the abandoned facility. They did not, however, separately assign this issue as error. Nonetheless, we find no merit to this contention as parties may sue only where they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise authorized by law. *See Dye v. State ex rel. Hale*, 507 So. 2d 332, 338 (Miss. 1987) (noting that standing to sue is conferred upon any

party adversely affected or impacted by the defendant's conduct or actions). The Sauciers have not proven that any of the medical records found in the abandoned facility belonged to them. Nor have they shown any harm resulting from the medical records being left there or any authorization under the law which vests them with standing to sue on this basis.

3. The Sauciers fail to individualize the appellees' liability in this matter. Their primary allegation is that the appellees knew that children were frequenting the building; however they do not address the fact that at the time of the incident the facility was owned by the City of Biloxi, not the Biloxi Regional Medical Center. Furthermore, they fail to discuss how, *assuming arguendo* that Bamburg was negligent in not removing the drugs from the facility (the Board of Pharmacy absolved her of any negligence in this regard), she can be held liable as the director of pharmacy for the alleged inadequate security measures.