815 So.2d 1237 (2001)
James DAULTON and Brenda Daulton, Appellants,
v.
Annette MILLER, Appellee.
No. 2000-CA-02121-COA.
Court of Appeals of Mississippi.
December 4, 2001.
Rehearing Denied February 12, 2002.
Certiorari Denied May 9, 2002.
*1238 Edward Ashley Moss, Angela M. Spivey, Attorneys for Appellants.
Timothy R. Balducci, Booneville, B. Wayne Williams, Attorneys for Appellee.
Before SOUTHWICK, P.J., IRVING, and MYERS, JJ.
SOUTHWICK, P.J., for the Court.
¶ 1. The plaintiffs filed suit for injuries that one of them suffered while on the defendant's property to examine an outdoor Christmas display. Summary judgment was granted the defendant. On appeal, the plaintiffs assert that there is a disputed issue of material fact that could cause the plaintiff to be considered a business or public invitee, thereby increasing the duty of care owed by the landowner. We find that summary judgment was proper and affirm.

STATEMENT OF THE FACTS
¶ 2. Annette Miller and her husband reside in Paris, Lafayette County, Mississippi. It has been their practice to decorate their property with an assortment of lighting displays and other items symbolic of the Christmas season. This display of the holiday spirit was part of a neighborhood-wide endeavor and attracted spectators from more than a five county radius. Miller charged no admission and received no other monetary consideration from visitors to the property.
¶ 3. On December 29, 1997, Brenda Daulton was on the Miller property to enjoy the display. While there, she fell and broke her right ankle. The area where Daulton fell was described as a grass pathway with a slight grade or slope. As a result of her fall, Daulton required extensive surgery on her ankle, experienced extensive pain, and suffered permanent damage to her ankle.
¶ 4. On November 29, 1999, Daulton and her husband James filed suit asserting that Miller was negligent. Summary judgment in favor of Miller was eventually granted.

DISCUSSION
¶ 5. The only appellate issue is whether a dispute of material fact existed that barred the grant of summary judgment. Such a judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a *1239 judgment as a matter of law." M.R.C.P. 56(c). Thus there are two issues. One is whether as to the material facts, any are in dispute. The second is whether the legal analysis of the undisputed facts has led the trial judge to the correct decision.
¶ 6. The starting place for a negligence suit such as this is to identify the nature of any rights the injured party had to be on the property where the injury occurred. Daulton must be an invitee, a licensee or a trespasser. Little by Little v. Bell, 719 So.2d 757, 760 (Miss.1998). 1) An invitee is a person who enters the property of another in response to an express or implied invitation of the owner or occupant for the mutual advantage or benefit of the parties involved. Little, 719 So.2d at 760. 2) A licensee is a person entering another's property for his own benefit or pleasure. 3) Finally, a trespasser enters premises "without license, invitation or other right." Id.
¶ 7. What follows inexorably from identifying the injured party's status is the defining of the landowner's duty. An invitee is owed the highest duty. The landowner must provide property that is "reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not plain and open view." Id. A licensee or trespasser is owed only the duty to have the landowner "refrain from willfully or wantonly injuring him." Id.
¶ 8. Mutual advantage is needed to create invitee status. This guest's benefit is evident enough, as she was enjoying the lighting display. The landowner Miller's benefit is not so clear. She did not charge admission nor receive any tangible form of consideration. The benefit that Daulton alleges Miller received is the noneconomic satisfaction of having people see her Christmas display. Daulton cites no Mississippi precedent that recognizes personal satisfaction as the landowner's component of the mutual benefit that is required to confer the status of invitee.
¶ 9. One of Miller's arguments is that requiring some financial advantage to the owner makes "advantage" mean something different for the owner than it does for the entrant. That is true. The entrant was not getting a financial advantage but was just enjoying the display. Still, no matter the category, whether invitee, licensee, or trespasser, the entrant's advantage is not the issue. In all situations, the entrant has voluntarily appeared for some reason sufficient to that person. The law does not much concern itself with the nature of the reason. The differences among the categories focus on the owner and whether that person is receiving an advantage, or just permits the presence of the entrant, or actually opposes the entry.
¶ 10. There was no business advantage acquired by the homeowner here. The psychological satisfaction was akin to that enjoyed by a host of a party. A person who invites friends, neighbors, or others to enjoy hospitality has certainly made an "invitation," but this does not transform those who respond into "invitees" as here defined. One well-recognized authority explains that "`[i]nvitee' is a word of art, with a special meaning in the law.... A social guest may be cordially invited, and strongly urged to come, but he is not an invitee." RESTATEMENT (2D) TORTS § 332 (1965). The reason for this was addressed by the Supreme Court:
The guest assumes the ordinary risks which attach to the premises. No exception is made to the rule because of the fact that the guest enters on the host's express invitation to enjoy his hospitality. It is said that the owner or occupant must have a beneficial interest in a visit in order to impose upon him *1240 the duty of using reasonable care in having the premises in a safe condition for the visitor, and that the intangible advantages which arise from mere social contacts do not comprise such an interest. A better reason for the rule is that a host merely offers his premises for enjoyment by his guests with the same security that the host and the members of his family who reside with him have.
Wright v. Caffey, 239 Miss. 470, 476, 123 So.2d 841, 843 (1960), quoting 38 AM.JUR., NEGLIGENCE, § 117, p. 778.
¶ 11. To fit within the economic advantage category, Daulton principally relies on two cases. In one, a person was injured at the Old Spanish Fort historical site, which she had entered "upon an implied representation or assurance that the land had been prepared and made ready and safe for her reception." Alexander v. Jackson County Historical Society, Inc., 227 So.2d 291, 292 (Miss.1969). The Court held that the plaintiff was "one of the class of invitees denominated `public invitees.'" Id. The obvious distinction with the case, though, is that the Old Spanish Fort charged an admission fee. The mutual economic or business advantage was proven.
¶ 12. The second case on which Daulton relies is even more clearly emphasizing economic advantage as the linchpin for invitee status. Clark v. Moore Memorial United Methodist Church, 538 So.2d 760, 764 (Miss.1989). A church member filed suit for personal injuries obtained when she slipped and fell at the church. The lower court found that the member was the equivalent of a social guest, who is a licensee, since there was no economic benefit to the church "as it is a non-commercial, non-profit entity." Clark, 538 So.2d at 762. The Supreme Court reversed.
Religious bodies do expressly and impliedly invite members to come and attend their services and functions. They hold their doors open to the public. While they do not charge admission fees as does the Old Spanish Fort, churches do depend on contributions much the same as historical sites do, in order that they may continue to be open to the public. Therefore, a church member who does not exceed the scope of a church's invitation, is an invitee while attending a church for church services or related functions.
Id. The importance of Clark is that the Court relied on the potential of monetary contributions to define the status of the entrant. That is the missing ingredient in the case before us.
¶ 13. There was no economic benefit, realized or potential, gained by Miller in the present case. Instead, there was an economic cost created by this extravagant Christmas display, in the form of maintenance to her property and increased electric bills.
¶ 14. "The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law." Adams v. Fred's Dollar Store of Batesville, F.W., 497 So.2d 1097, 1100 (Miss.1986). As such Daulton's status is properly defined as a licensee.
¶ 15. The duty of care that a landowner owes a licensee is "to refrain from willfully or wantonly injuring him." Little, 719 So.2d at 760. Daulton's Complaint described the area where she fell as a "dimly lit grass pathway," crossing "uneven, bumpy ground...." Having a pathway such as this does not constitute willful and wanton creation of dangers to people entering the property.
The guests assumes the ordinary risks which are attached to the premises. No exceptions is made to this rule because *1241 of the fact that the guests enters on the host's express invitation to enjoy his hospitality. A hosts merely offers his premises for the enjoyment of his guests with the same security which the host and members of his family who reside with him have.
Id., citing Raney v. Jennings, 248 Miss. 140, 158 So.2d 715, 718 (1963).
¶ 16. Daulton presented no evidence in any of her pleadings, affidavits, or depositions which created a genuine issue of material fact as to whether Miller's conduct could be willful or wanton. The granting of summary judgment was proper on this issue.
¶ 17. Mr. Daulton also makes a claim for loss of consortium. This is solely a derivative claim. Choctaw, Inc. v. Wichner, 521 So.2d 878, 881 (Miss.1988). Restated, this means that a spouse has no better claim in court than the primary claimant does. Mrs. Daulton's status when injured on Miller's property was that of a licensee. The only duty that Miller owed was not to wilfully and wantonly injure her. Having upheld that duty, Miller is not subject to a derivative claim.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR.