IN THE SUPREME COURT OF MISSISSIPPI
NO. 92-CA-00645-SCT

*ANDREA D. LITTLE, BY MOTHER AND NEXT FRIEND, REGENIA W. LITTLE*

*v.*

*LARRY BELL AND KAREN BELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/92 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | CHARLES R. WILBANKS, SR. |
| ATTORNEY FOR APPELLEES: | WENDELL H. TRAPP, JR. |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 8/6/98 |
| MOTION FOR REHEARING FILED: | 10/5/95 |
| MANDATE ISSUED: | 8/17/98 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Motion for rehearing is denied and these opinions are issued by the Court.

¶2. This case comes to this Court for the purpose of addressing whether the lower court's granting of a directed verdict on the grounds that Andrea Little was a licensee was correct. On November 19, 1990, Andrea Little's mother, Regenia W. Little, filed a Complaint in the Circuit Court of Alcorn County, Mississippi, as Andrea's mother and next friend, naming Larry and Karen Bell as Defendants. The Complaint alleged that on June 18, 1990, while a guest at the Bells' home, Andrea was allowed to play on the Bell's trampoline, and while either mounting or dismounting the trampoline, Andrea stepped on a milk crate located below the trampoline, resulting in a fall and concomitant injury. The Complaint further alleged that $9,318,84 in medical costs had been accumulated, and, *inter alia*, that Andrea had experienced loss of kindergarten attendance, pain and suffering, and disability. Additionally, the Complaint alleged that the sole proximate cause, or a contributing cause of the accident was the negligence of the Bells by providing an unstable and dangerous method of mounting and dismounting the trampoline, failing to supervise the use of the trampoline, failing to instruct Andrea on the use of the trampoline, failing to warn Andrea of the dangers of the use of the trampoline, setting up and maintaining the trampoline in an improper place and in a dangerous condition, and negligently moving Andrea without professional help after she had fallen and injured

herself.

¶3. The Bells answered and admitted that Andrea was at the Bells' residence, and fell while attempting to mount or dismount the trampoline, but denied the substantive allegations of negligence and proximate causation contained in the complaint. The Answer also asserted numerous defenses including failure to state a claim, superseding negligence of others, and immunity from suit pursuant to Miss. Code Ann. § 73-25-37 (1972).

¶4. On May 24, 1991, the Plaintiff/Appellant (Littles) amended their Complaint, adding an allegation that, if it was determined that Andrea was a trespasser, then the trampoline constituted an inherently dangerous "attractive nuisance." The Complaint was also amended to seek compensation for mental distress suffered by Andrea. The Defendants/Appellees (Bells) answered the Amended Complaint, denying that the "attractive nuisance" doctrine applied to the facts of the case.

¶5. Thereafter, on May 7, 1992, a trial on the merits was held in the Circuit Court of Alcorn County, Mississippi, Honorable Thomas J. Gardner III, presiding. After presentation of the Plaintiff's case-in-chief, the Plaintiff rested, whereupon the Defendants moved the lower court for a directed verdict and/or judgment on the pleadings. The lower court sustained the Defendant's motion for directed verdict, concluding that Andrea Little was a licensee, and entered judgment for the Defendants on May 19, 1992.

¶6. Aggrieved by the lower court's decision, the Littles, by and through their attorney, Honorable Charles R. Wilbanks, appealed to this Court and raised the following issues:

> **I. THE TRIAL COURT ERRED IN DETERMINING THAT THE STANDARD OF CARE OWED BY MR. AND MRS. BELL TO ANDREA LITTLE WAS NOT TO WILLFULLY OR BY GROSS NEGLIGENCE INJURE THE PLAINTIFF.**
>
> **II. THE TRIAL COURT ERRED IN ITS INTERPRETATION OF ACTIVE AND PASSIVE NEGLIGENCE.**
>
> **III. THE TRIAL COURT ERRED IN HOLDING THAT ANDREA LITTLE FAILED TO MAKE OUT A PRIMA FACIE CASE AND ERRED IN DIRECTING A VERDICT AGAINST ANDREA LITTLE AND IN FAVOR OF MR. AND MRS. BELL.**
>
> **IV. THE TRIAL COURT ERRED IN DETERMINING THAT THE PLAINTIFF'S CAUSE OF ACTION SOLELY AROSE UNDER THE PREMISES LIABILITY THEORY.**
>
> **V. THE TRIAL COURT ERRED IN ADHERING SOLELY TO THE THEORIES OF PREMISES LIABILITY.**
>
> **VI. THE TRIAL COURT ERRED IN EXCLUDING THE EVIDENCE OF FORESEEABILITY AS TO THE DANGERS OF THE TRAMPOLINE THAT ANDREA LITTLE WAS PLAYING ON AT THE TIME SHE WAS INJURED.**

¶7. On September 28, 1995, this Court affirmed the Circuit Court's ruling per curiam. Thereafter, on October 5, 1995, the Littles filed a Petition for Rehearing, maintaining that Andrea made out a prima

facie case in the trial court and her case should be decided by a jury.

## FACTS

¶8. In June of 1990, Linda Smith and her daughter, Richelle, traveled from their home in South Carolina to Corinth, Mississippi, to visit Andrea and her mother, Regenia. While Linda and her daughter were visiting at Andrea's house, Larry Bell came by to take Linda and Richelle to the Bells' house. At that time, Larry commented to Andrea about having a trampoline at his house and that she would enjoy playing on it.

¶9. Thereafter, on June 17, 1990, Linda suggested to Andrea's parents that she take Andrea over to the Bells' home to let her play on their trampoline. Andrea's mother agreed and on June 18, 1990, Andrea accompanied Linda and Richelle to the Bells' home.

¶10. The Bells kept a trampoline in their back yard. Andrea and Richelle used an eleven-inch-high milk crate to aid them in mounting and dismounting the trampoline. After playing on the trampoline, Andrea and Richelle dismounted it and went back into the Bells' kitchen to get some water. Soon after, Andrea and Richelle asked Karen Bell if they could go back outside to play on the trampoline again. Karen Bell said yes, but told them to wait until she went outside with them before they resumed jumping on the trampoline. However, when Karen Bell went to finish picking up dishes in the kitchen, Andrea and Richelle returned to the trampoline. There is conflicting testimony at this point as to whether Linda Smith went outside with Andrea and Richelle and thus was in the back yard when the accident occurred.

¶11. Andrea and Richelle briefly jumped on the trampoline, and then stopped to go back into the Bells' house. Upon dismounting, Andrea placed her weight on one end of the milk crate, and the milk crate fell over, resulting in an "eleven-inch-fall" which caused Andrea's broken leg.

¶12. Karen Bell, who had seen the accident through the kitchen window, immediately ran outside to Andrea. Karen and Linda examined Andrea to determine the extent of her injury and decided to take Andrea home to her parents. Andrea's mother, Regenia Little, immediately took Andrea to the hospital in Corinth, where the emergency room doctor diagnosed Andrea's injury as a fractured right femur. The doctor gave Andrea pain medication and referred her to an orthopedic surgeon in Tupelo, Mississippi. Upon arrival in Tupelo, Andrea underwent surgery to insert a pin in her leg. She was then hospitalized and placed in traction from June 19, 1990, to July 5, 1990. Her leg was then put in a cast for several weeks.

## LEGAL ANALYSIS

¶13. The standard of review is as follows:

> This Court conducts a de novo review of motions for directed verdict . . . . If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted.

*Pace v. Financial Sec. Life of Mississippi*, 608 So. 2d 1135, 1138 (Miss. 1992) (citation omitted). Additionally, this Court has held that "[a] trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vines v.*

*Windham*, 606 So. 2d 128, 131 (Miss. 1992).

## B. Discussion of the Law

¶14. This Court has consistently held that the duty owed to an entrant on property is determined by reference to her status under the common law system. Throughout this state's jurisprudence, Mississippi has followed the common-law distinctions between trespassers, licensees, and invitees when determining the landowner's duty. *Skelton v. Twin County Rural Elec. Ass'n*, 611 So. 2d 931, 936 (Miss. 1992) (*citing* ***Payne v. Rain Forest Nurseries, Inc.***, 540 So. 2d 35, 37 (Miss. 1989); ***Hoffman v. Planters Gin Co.***, 358 So. 2d 1008, 1011 (Miss. 1978); ***Lucas v. Buddy Jones Ford Lincoln Mercury, Inc.***, 518 So. 2d 646, 647 (Miss. 1988)). Accordingly, in order to ascertain any liability of the landowner, it is necessary to determine the following:

(1) the status of the injured party, that is, whether Andrea was a trespasser, licensee, or invitee;

(2) the duty the landowners (Bells) owed to Andrea based upon her particular status; and

(3) whether the landowners breached their duty of care to Andrea. *See Hoffman v. Planters Gin Co.*, 358 So. 2d 1008 (Miss. 1978).

## The Status of the Injured Plaintiff

¶15. "As to status, an invitee is a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their **mutual** advantage." *Hoffman*, 358 So. 2d at 1011 (emphasis added) (citations omitted). "A licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner whereas a trespasser is one who enters upon another's premises without license, invitation, or other right." *Id.* (citations omitted).

## The Landowner's Corresponding Duty

¶16. Under Mississippi law, the landowner's duty in relation to each category has been identified as follows. A landowner owes a licensee a duty to refrain from willfully or wantonly injuring him. *Adams v. Fred's Dollar Store of Batesville*, 497 So. 2d 1097, 1100 (Miss. 1986) (citations omitted). "A landowner owes a trespasser the duty to refrain from willfully or wantonly injuring him." *Id.* (citations omitted). A landowner owes an invitee the duty to keep the premises reasonably safe and when not reasonably safe to warn only where there is hidden danger or peril that is not plain and open view. *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 773 (Miss. 1992).

## Question of Fact or Question of Law

¶17. In regards to the issue of status, this Court has held "[t]he determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law for the trial judge." *Adams*, 497 So. 2d at 1097, 1100 (Miss. 1986) (citations omitted).

¶18. In the case at bar, except for the issue of whether Linda Smith was outside with the children at the time when Andrea fell, the parties largely agree on the facts of the case. Accordingly, the

determination of Andrea's status upon the Bells' property, was properly a question of law to be decided by the trial judge. The trial judge appropriately concluded under the facts presented that Andrea was a licensee rather than an invitee. Andrea does not meet the definition of an invitee since the element of mutual benefit was lacking, that is, there was no benefit flowing to the landowners (Bells) by virtue of Andrea's presence upon the premises. However, Andrea's presence upon the Bells' property clearly fits within all of the elements associated with that of a licensee. Specifically, Andrea entered the Bells' property for her own pleasure and she was there with the owner's (express or implied) permission. Accordingly, the trial judge's determination concerning Andrea's status as a licensee is affirmed.

¶19. Because Andrea was properly classified as a licensee, the landowners (Bells) duty in regards to Andrea was to refrain from willfully or wantonly injuring her. In determining whether the Bells breached their duty of care in regards to Andrea, this Court's decision in *Raney v. Jennings*, 248 Miss 140, 158 So. 2d 715 (1963), provides a helpful discussion of willful and wanton conduct in regards to a social guest.

> Willfulness and wantonness connote knowingly and intentionally doing a thing or wrongful act. . . . The guest assumes the ordinary risks which are attached to the premises. No exception is made to the rule because of the fact that the guest enters on the host's express invitation to enjoy his hospitality. A host merely offers his premises for the enjoyment of his guests with the same security which the host and members of his family who reside with him have.

*Id.* at 147-48, 158 So. 2d at 718.

¶20. In the case at bar, Andrea was injured while stepping onto a milk crate from a trampoline. Andrea's injuries resulted from an eleven-inch fall from the milk crate. There is no evidence in the record that the Bells "knowingly or intentionally" placed the milk crate in such a manner as to constitute a hazard. Mrs. Bell testified that she had children and she presumably felt comfortable in allowing her own children to use the milk crate to mount and dismount the trampoline. Accordingly, Andrea was afforded the same security as that of the Bell family. The plaintiffs provided no evidence that Mrs. Bell acted willfully and wantonly in regards to Andrea and her resultant injury. Accordingly, the trial judge's granting of the directed verdict in favor of the defendants (Bells) is affirmed.

¶21. Ordinarily, addressing the above outlined elements would conclude the discussion of liability in a case such as the one at bar. However, in this case, the Littles disagree with the current state of premises liability law in this state, and consequently, urge this Court to abandon our long established precedent and abolish the traditional classifications and "apply the same standard of care under the circumstances, whereby foreseeability shall be a measure of liability."

¶22. The Littles argue that the facts of the case sub judice are analogous to those in *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008 (Miss. 1978), wherein this Court held that the ordinary and reasonable standard of care has application and "the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known. . . ." *Id.* at 1013. However, in *Hughes v. Star Homes, Inc.*, 379 So. 2d 301 (Miss. 1980), this Court subsequently acknowledged that a different standard of care was applied in the *Hoffman* case but also explained that the *Hoffman* holding was a very limited exception.

In one case, *Hoffman v. Planters Gin Co., Inc.*, 358 So. 2d 1008 (Miss. 1978), we applied the standard of ordinary and reasonable care rather than the standard of intentional or wanton negligence due a licensee. In that case we held that the owner of premises is liable for injury proximately caused by the owner's affirmative or active negligence in the operating or control of activities which subjects a licensee to unusual danger or increases the hazard to the licensee when the presence of the licensee is known. In *Hoffman*, we changed the standard of care owing to a licensee but **carefully limited the new standard of care** to those cases involving injury resulting from active conduct **as distinguished from conditions of the premises**, or passive negligence.

*Hughes*, 379 So. 2d at 304 (emphasis added). Accordingly, the *Hughes* decision makes it clear that the *Hoffman* exception only applies to those cases involving the **operation or control of a business**. In order to fall within the Hoffman exception, the landowner must be aware of the licensee's presence upon the premises, the landowner must engage in affirmative or active negligence in the operation or control of a business, the landowners' conduct in regards thereto must subject the licensee or invitee to unusual danger, or increase the hazard to him, **and** the landowner's active or affirmative negligence must have proximately caused the plaintiff's injury.

¶23. In the case at bar, Mrs. Bell was certainly aware of Andrea's presence upon her property. However, Mrs. Bell was not engaged in affirmative or active negligence **in the operation or control of a business** as is required by the express language of the *Hoffman* holding. Consequently, the Littles' contention that the facts of the case at bar fall within the *Hoffman* exception is unfounded. Accordingly, we decline the Little's invitation to abolish the traditional classifications and the corresponding landowner duties. Furthermore, we also reject their invitation to extend the *Hoffman* exception to ordinary control of the premises situations where there is no operation or control of a business.

¶24. Moreover, in addition to our own precedent, the majority of the States retain the common law distinctions between invitee and licensee. See *Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo. 1995) ("We are not persuaded that the licensee/invitee distinction no longer serves."); *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996) ("Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability."); *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993); *Morin v. Bell Court Condominium Ass'n*, 612 A.2d 1197, 1199 (Conn. 1992) ("In general, there is an ascending degree of duty owed by the possessor of land to persons on the land based on their entrant status, i.e., trespasser, licensee or invitee."); *Dudley v. USX Corp.*, 606 A.2d 916, 922 (Pa. 1992); *Easterling v. American Olean Tile Co.*, 600 N.E.2d 1088, 1093 (Ohio Ct. App. 1991); *Markle v. Hacienda Mexican Restaurant*, 570 N.E.2d 969, 976 (Ind. Ct. App. 1991); *Lohrenz v. Lane*, 787 P.2d 1274, 1276 (Okla. 1990); *Kirschner v. Louisville Gas & Elec.*, 743 S.W.2d 840, 844 (Ky. 1988) ("[W]e reject [the] assertion that we should abolish the classifications of trespasser, licensee, and invitee."); *Baldwin v. Mosley*, 748 S.W.2d 146, 148 (Ark. 1988) ("We are presented no compelling reason why we should depart from our holding in Coleman to continue to follow the common-law distinctions as determinative of landowner liability."); *Lindquist v. Albertsons, Inc.*, 748 P.2d 414, 416 (Idaho Ct. App. 1987); *Younce v. Ferguson*, 724 P.2d 991, 993 (Wash. 1986) ("We . . . reaffirm use of common law classifications to determine the duty of care owed by an owner or occupier of land"); *Mech v. Hearst*

*Corp.*, 496 A.2d 1099, 1101 (Md. Ct. Spec. App. 1985), ("It is a venerable principle of Maryland law that in negligence actions the standard of care required of owners and occupiers of land with respect to an individual on their land is determined by 'the individual's status while on the property, i.e., whether he is an invitee, licensee, or trespasser.'")(citations omitted), *cert. denied*, 501 A.2d 1323 (Md. 1986); *Nicoletti v. Westcor, Inc.*, 639 P.2d 330, 332 (Ariz. 1982) ("The particular duty owed to the entrant on the land is defined by the entrant's status."); *Zipkin v. Rubin Constr. Co.*, 418 So. 2d 1040, 1042- 43 (Fla. Dist. Ct. App. 1982) ("Florida classifies entrants onto the land of another into the following three categories: (1) trespassers, (2) uninvited licensees, and (3) invited licensees and invitees"); *Frederick v. Reed*, 410 So. 2d 95, 97 (Ala. Civ. App. 1982) ("the duty owed depends upon whether the person is a trespasser, invitee, or licensee"); *Mazzacco v. Purcell*, 279 S.E.2d 583, 586 (N.C. 1981) ("The standard of care owed to plaintiff depends upon whether plaintiff was a licensee or invitee."); *Rennick v. Hoover*, 606 P.2d 1079, 1081 (Mont. 1980) ("The duty imposed upon a property owner in Montana continues to be dependent on the status of the injured party, either invitee, licensee or trespasser."); *Buchanan v. Prickett & Son, Inc.*, 279 N.W.2d 855 (Neb. 1979); *Tjas v. Proctor*, 591 P.2d 438, 441 (Utah 1979) ("The duty owed by a property owner to one who is injured on his property depends on whether that person is an 'invitee,' or a 'licensee' or a 'trespasser.'"); *Taylor v. Baker*, 566 P.2d 884, 889 (Or. 1977); *Epps v. Chattahoochee Brick Co.*, 231 S.E.2d 445, 427 (Ga. Ct. 1976); *State v. Tennison*, 509 S.W.2d 560, 562 (Tex. 1974) ("This court has recognized that the duty owed by an occupier to a person injured on his premises, is dependent on the legal status of the injured party; that is, whether invitee or licensee."); Colo. Rev. Stat. § 13-21-115 (1997). In recently rejecting the very proposition the Littles put before this Court today, the Missouri Supreme Court stated,

> The contours of the legal relationship that result[ ] from the possessor's invitation reflect a careful and patient effort by courts over time to balance the interests of persons injured by conditions of land against the interests of possessors of land to enjoy and employ their land for the purposes they wish. Moreover, and despite the exceptions courts have developed to the general rules, the maintenance of the distinction between licensee and invitee creates fairly predictable rules within which entrants and possessors can determine appropriate conduct and juries can assess liability. To abandon the careful work of generations for an amorphous "reasonable care under the circumstances" standard seems--to put it kindly--improvident.

*Carter v. Kinney*, 896 S.W.2d 926, 930 (Mo. 1995). We agree with the Missouri court.

¶25. Accordingly, the trial court's granting of the directed verdict in favor of the defendants is affirmed.

## CONCLUSION

¶26. Under the facts of the case at bar, the injured plaintiff, Andrea, was a licensee upon the Bells' property. Therefore, the Bells' duty to Andrea was to refrain from willful and wanton conduct that would result in Andrea's injury. At trial, the plaintiffs presented no evidence showing that the Bells engaged in willful or wanton misconduct which resulted in the injury sustained by Andrea Little. Consequently, the trial judge was correct in directing a verdict in the defendant's favor.

¶27. On appeal and on petition for rehearing, the Littles urge this Court to abolish the traditional common-law distinctions of trespassers, licensee, and invitee and apply the ordinary and reasonable

standard of care under the circumstances whereby foreseeability would be the measure of liability. However, this Court declines the invitation to abolish the well-established jurisprudence in the area of premises liability. We fail to see the need for such action, which would ultimately subject all landowners to unwarranted and unlimited liability for all types of natural conditions upon their property. This would ultimately require property owners to insure against injury to all persons who enter upon their property as well as encourage frivolous lawsuits against home owners. For example, it's foreseeable that an individual, and especially a child, will come upon the landowner's premises and fall while climbing or descending the steps to the front porch. However, we are not prepared to subject landowners to liability for such incidents since ordinary negligence could be alleged in all cases where the landowner has not posted warning signs and installed slip-proof material on all such steps. Of course, this rationale could also be applied to other conditions, natural or otherwise, occurring on the landowner's property, such as fences and trees. Property owners do not expect to assume a general duty of reasonable care, and thus become insurers, for everyone who walks upon their property. Such action would surely discourage neighborly comity and encourage frivolous lawsuits by allowing vague allegations of negligence to always go to the jury for a determination of fault.

¶28. This Court, as well as the vast majority of other courts, have recognized that landowners occupy a special place in society. They are, as are the home owners in the case as bar, natural targets of liability whenever an injury occurs on their property due to the carelessness of the injured party. The tripartite system of invitee, licensee, and trespasser, evolved to delineate very fine distinctions as to when a duty was owed to an entrant on land, in part to protect the landowner from the unfettered discretion of juries.

¶29. Far superior minds than ours have considered this very issue over an extended period of many years and crafted a careful and patient test to balance the interests of all concerned. We will not haphazardly abandon this long established legal distinction between invitee and licensee. The common-law distinctions are still valid, and especially in cases involving licensees, that is, one who enters the premises for his own convenience, pleasure or benefit: the individual taking advantage of the landowner's hospitality assumes the ordinary risks which are attached to the premises.

¶30. **JUDGMENT AFFIRMED.**

**PRATHER, C.J., ROBERTS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ., AND BANKS, J. MILLS, J., NOT PARTICIPATING.**


**McRAE, JUSTICE, DISSENTING:**


¶31. The majority has succeeded in transforming a simple case of negligence into a jumble of classifications and explanations. Not only does the majority ignore our familiar standard regarding the review of the propriety of a directed verdict, but also the majority misreads prior rulings of this Court regarding active and passive negligence. Moreover, the majority's judgment regarding the viability of

the common law distinctions of licensee and invitee is unsound. With all respect, then, I dissent.

### I.

¶32. This Court conducts a de novo review of motions for directed verdict. The evidence in directed verdict cases and all reasonable inferences that may be drawn therefrom must be considered in a light most favorable to the non-moving party. *Eselin-Bullock & Assoc. Ins. Agency, Inc. v. National Gen. Ins. Co.*, 604 So. 2d 236, 239-40 (Miss. 1992). "If the Court finds that the evidence favorable to the non-moving party and the reasonable inferences drawn therefrom present a question for the jury, the motion should not be granted." *Allstate Ins. Co. v. McGory*, 697 So. 2d 1171, 1175 (Miss. 1997). This Court also has held that "a trial court should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vines v. Windham*, 606 So. 2d 128, 131 (Miss.1992).

¶33. In the present case, the Bells, owners of the trampoline, knew of the risks involved with using a trampoline. They knew that it was several feet off the ground and that some people required a boost (like a milk crate) to get on and off the trampoline. Further, Karen Bell knew that small children, including Andrea Little, would be using the trampoline on the day of the incident.

¶34. Andrea Little did not merely wander into the Bells' yard uninvited. She received an invitation, albeit general, to come over with her aunt and cousin to play on the trampoline. Karen Bell, through her kitchen window, watched the entire incident unfold and ran out to help Andrea when she fell. There is conflicting testimony as to whether Andrea's aunt, Linda Smith, was in the yard at the time Andrea fell. Moreover, while Bell had instructed the children not to jump on the trampoline until she joined them outside, thus assuming supervisory responsibility, there is no evidence that she tried to stop the children when they began to play on the trampoline without her or that she provided them with cautionary instructions, direct supervision or adult assistance that children of Andrea's and Richelle's ages should have been given.

¶35. The evidence most favorable to the plaintiffs in this case and the reasonable inferences drawn therefrom present a straightforward negligence question. This is a question that the jury should have been given the opportunity to resolve, pursuant to the proper legal standard. This question should not be cut off at the directed verdict or summary judgment stage based on meaningless legal fictions created by this Court.

### II.

¶36. In *Hoffman v. Planters Gin Co.*, 358 So. 2d 1008, 1013 (Miss. 1978), this Court held that the owner of premises is liable for injury proximately caused by the owner's affirmative or active negligence in the operation or control of activities which subjects a licensee to unusual danger or increases the hazard to the licensee when the presence of the licensee is known. The *Hoffman* Court noted that the licensee/invitee status "relates largely to negligence for the condition of premises, that is, passive negligence and not to active or affirmative negligence emanating from action or inaction by the possessor with knowledge of an individual's presence." *Id.* Acknowledging the existence of active and passive negligence, the Court concluded that the testimony in that case presented a conflict of facts to be evaluated by the jury using the ordinary and reasonable care standard:

> We think the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application.

*Id.* at 1013.

¶37. Applying *Hoffman* to the instant case and treating Andrea Little as a licensee, Karen Bell still owed her a duty of reasonable care because she was aware of Andrea's presence, acquiesced in her presence, and engaged in what was at least passive negligence by failing to assure that Andrea and Richelle were properly supervised in using the trampoline and failing to provide a safe condition for using the trampoline. The owner here knew that the child was on the trampoline, that the trampoline was three or four feet off the ground, and that the only means of ingress to and egress from the trampoline was a milk carton. Just as this Court reasoned in *Hoffman*, we should base our opinion "upon the affirmative action of the defendant as creating a jury issue to be determined by the doctrine of reasonable care." *Hoffman*, 358 So. 2d at 1012. Because Bell did nothing to alleviate the harm presented by the condition of the premises, a jury should be allowed to determine whether Bell breached her duty to Andrea Little. The trial court, therefore, erred in granting a directed verdict.

¶38. The majority is disingenuous in suggesting that *Hughes v. Star Homes, Inc.*, 379 So. 2d 301 (Miss. 1980) somehow clarified *Hoffman* to limit its application to the operation of a "business." While both cases dealt with owners who operated a business, the principle enunciated, liability for active negligence, even to a licensee, transcends the status of business owner. Indeed, *Hughes*, in its discussion of *Hoffman*, never used the word "business." *Hughes* spoke only in terms of the premises owner and concluded only that no active negligence was shown under the particular facts of that case. *Hughes*, 379 So. 2d at 304. Under *Hoffman* and *Hughes*, the instant case should turn not on whether Karen Bell was operating a business but on whether she was actively or passively negligent. It appears that Bell did in fact assume control over how and when the children used the trampoline. Accordingly, her failure to execute that responsibility in a reasonable manner under the circumstances is a question for the jury.

### III.

¶39. Justice Inzer, writing for the majority of the Court in 1970, expressed his feelings regarding traditional common law distinctions in premises liability cases:

> It is the thinking of this writer, but not necessarily that of the Court, that this area of law merits further study in the light of present day conditions and it may well be that this Court will in the future abandon the traditional distinctions between trespassers, licensees and invitees, or at least draw a distinction between active and passive negligence insofar as a licensee is concerned.

*Astleford v. Milner Enter., Inc.*, 233 So. 2d 524, 526 (Miss. 1970). Contrastingly, this Court has also stated that Mississippi should continue to recognize the common-law distinctions between "invitees" and "licensees" regarding the duty owed by a landowner to other persons on the landowner's property. *Adams v. Fred's Dollar Store of Batesville*, 497 So. 2d 1097, 1102 (Miss. 1986). The time has come for us to reconcile these cases and join those jurisdictions which have abolished the invitee-licensee distinctions in favor of a single standard of reasonableness under the

circumstances.

¶40. In 1957, Great Britain's parliament abolished the licensee-invitee distinction in favor of a unitary standard of reasonable care under the circumstances. Later, the United States Supreme Court rejected the licensee-invitee distinction in admiralty cases. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 631 (1959).

> The distinctions which the common law draws between licensee and invitee were inherited from a culture deeply rooted to the land, a culture which traced many of its standards to a heritage of feudalism. In an effort to do justice in an industrialized urban society, with its complex economic and individual relationships, modern common-law courts have found it necessary to formulate increasingly subtle verbal refinements, to create subclassifications among traditional common-law categories, and to delineate fine gradations in the standards of care which the landowner owes to each. Yet even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Id.* at 630-31.

¶41. The majority points out that many of our sister jurisdictions retain the common law distinctions between invitee and licensee. In reality, just as many jurisdictions have eliminated the distinction between invitee and licensee in premises liability cases and have placed a duty of reasonable care on the property owner. Some jurisdictions have concluded that reasonable care by a premises owner towards others is determined on the basis of what is foreseeable, thereby abolishing all invitee-licensee restrictions. *Newton v. Magill*, 872 P.2d 1213, 1217 (Alaska 1994)(recognizing abandonment of trespasser-licensee-invitee classifications in favor of tort standard of reasonable care under the circumstances); *Alcaraz v. Vece*, 929 P.2d 1239, 1249 (Cal. 1997)(noting that the "rigid common law classifications" of trespasser, licensee, and invite have been abandoned in California); *Doe v. Grosvenor Properties (Hawaii) Ltd.*, 829 P.2d 512, 515 (Haw. 1992)(recognizing that rule of reasonable care regardless of status distinctions continues to define a duty of care in Hawaii); *Cates v. Beauregard Elec. Coop., Inc.*, 328 So. 2d 367, 371 (La. 1976), *cert. denied*, 429 U.S. 833 (1976) (abolishing rigid invitee-licensee-trespasser classifications); *Limberhand v. Big Ditch Co.*, 706 P.2d 491, 496 (Mont. 1985)(holding that test for determining duty owed by landowner to injured party is whether landowner exercised ordinary care under the circumstances, regardless of whether injured party is guest, invitee, or trespasser); *Wiley v. Redd*, 885 P.2d 592, 596 (Nev. 1994)(recognizing that the Nevada Supreme Court has moved from status-based tort analysis to that of a general duty of reasonable care in the domain of owners and occupiers of land); *Ouellette v. Blanchard*, 364 A.2d 631, 634 (N.H. 1976) (laying "to judicial rest" the classifications of invitee, licensee and trespasser); *O'Connor v. City of New York*, 447 N.E.2d 33, 36 (N.Y. 1983)(recognizing that New York Court of Appeals abolished distinctions between invitees, licensees and trespassers in suits against landowners).

¶42. The following states have abandoned the common-law standard of care owed to invitees and licensees while retaining the common-law standard for trespassers: *Jones v. Hansen*, 867 P.2d 303

(Kan. 1994); *Poulin v. Colby College*, 402 A.2d 846 (Me. 1979); *Mounsey v. Ellard*, 297 N.E.2d 43 (Mass. 1973); *Peterson v. Balach*, 199 N.W.2d 639 (Minn. 1972); *Ford v. Board of County Comm'r*, 879 P.2d 766 (N.M. 1994); *Heins v. Webster County*, 552 N.W.2d 51 (Neb. 1996); *O'Leary v. Coenen*, 251 N.W.2d 746 (N.D. 1977); *Ragnone v. Portland School Dist. No. 1J*, 633 P.2d 1287 (Or. 1981); *Tantimonico v. Allendale Mut. Ins. Co.*, 637 A.2d 1056, 1061-62 (R.I. 1994); *Hudson v. Gaitan*, 675 S.W.2d 699 (Tenn. 1984); *Antoniewicz v. Reszcynski*, 236 N.W.2d 1 (Wis. 1975); *Clarke v. Beckwith*, 858 P.2d 293 (Wyo. 1993). Illinois has enacted a statute abrogating the common-law categories of licensee and invitee. 740 Ill. Comp. Stat. Ann. 130/2 (West 1994). Maryland has questioned the viability of the common law classifications without specifically abolishing them. *Wagner v. Doehring*, 553 A.2d 684, 686 n.3 (Md. 1989)(noting contemporary usefulness of defining the standard of care in terms of the common law categories of trespasser, licensee and invitee is "questionable").

¶43. In many cases, recovery by an entrant upon land of another has become largely a matter of chance, dependent upon the grouping under which the law has placed him. *Heins*, 552 N.W.2d at 56. It is impossible to justify the preclusion of recovery of damages by a plaintiff for injuries sustained due to the negligence of a landowner merely because the plaintiff was a licensee and not an invitee. Abolishing the distinction between invitee and licensee would eliminate the need for confusing subclassifications, thereby insuring more equitable results and adhering to our state constitution, which mandates a remedy by due course of law for every person injured. Miss. Const., art. 3, § 24.

¶44. The common law system of classification has undermined the jury function, resulting in severe outcomes, because liability is mostly dependent on the entrant's status rather than the jury's evaluation of the landowner's conduct. By preventing the jury from applying changing community standards to a landowner's duties, the common law rules give the landowner a special privilege to be careless. Furthermore, battles over an entrant's status often result in judicial waste, as this Court has often disagreed with trial court classifications, remanding decisions to the trial courts under revised distinctions. In sum, the invitee-licensee classifications have generally failed to take into consideration the primary factors which should be evaluated in assessing fault.

¶45. Today, landowners hardly manage their property with the common-law distinctions of licensee and invitee in mind. *See Self v. Queen*, 487 S.E.2d 295, 300 (W. Va. 1997) (Starcher, J., concurring). Rather than hold on to an unworkable system which has needlessly complicated our jurisprudence, this Court should instead abandon the invitee-licensee distinction in favor of principles rooted in a negligence standard of reasonable care under like circumstances. A landowner or occupier of premises should act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk. This duty of care should extend to all persons, other than trespassers, who enter property with the defendant's consent, express or implied. In determining reasonable care, the status of the entrant may be considered as a factor, but should no longer be the determinative factor in assessing the landowner's or occupier's liability.

¶46. This change would not make landowners insurers of their property or require them to endure unreasonable burdens to maintain it. Unfettered juror discretion would be controlled, as it always has been, by the elements of negligence. Duty, breach, causation, and damages still would have to be established by a plaintiff before monetary damages may be awarded. Therefore, jurors still would

have solid, well-grounded legal parameters on which to base their decisions. The abolition of the licensee-invitee distinction would give jurors the flexibility to take account of the variety of fact situations which affect the foreseeability of presence and injury, and the balance of values which determines the allocation of the costs and risks of human injury. As previously advanced by Justice Banks in a well-reasoned dissent,

> [t]he focal point for judging the prudence of the landowner's conduct is shifted from the circumstances upon which persons enter the owner's property to the foreseeability of harm to others. The circumstances surrounding a person's presence on the property are still relevant, because they affect the foreseeability that harm might accrue to that person. Those circumstances are simply not totally dispositive of the issue of liability. The goal of this test is to bring into consideration all those factors that bear on the reasonableness of a landowner's behavior under a given set of circumstances. Thus, concerns like the seriousness of the injury, the burden of avoiding the risk, and contributory negligence all have a part to play in the analysis.

*Skelton v. Twin County Rural Elec. Ass'n*, 611 So. 2d 931, 941 (Miss. 1992)(Banks, J., dissenting) (citations omitted).

¶47. We should abolish the distinctions between licensee and invitee and set forth a single standard of reasonable care applicable to this or any other negligence case. In determining whether a defendant exerts reasonable care under the circumstances, the lower court would consider foreseeability of the injury, the degree of risk towards visitors, the benefit of retaining the condition, and the land occupier's burden of protecting against potential harm.

## IV.

¶48. In conclusion, the trial court erred in granting a directed verdict to Larry and Karen Bell. At the very least, under the circumstances of this case, the Bells were passively negligent in the maintenance of their premises. Further, this Court should abolish the invitee-licensee distinction and replace it with a standard of reasonable care under the circumstances. This case should be reversed and remanded for a trial on the merits. Since the majority chooses to misinterpret our case law regarding active and passive negligence and clings to the remnants of feudalism by relying on the common law classifications of invitee and licensee, I respectfully dissent.

**SULLIVAN AND PITTMAN, P.JJ., AND BANKS, J., JOIN THIS OPINION.**